**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Mark PHELPS, Defendant–Appellant.**

No. 88–5294.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 4, 1989.

Decided June 8, 1989.

Whoever, *during and in relation to any* crime of violence or *drug trafficking crime* ..., uses or carries a firearm, shall ... be sentenced to imprisonment for five years, and if the firearm is a machinegun [sic], ..., to imprisonment for ten years. (emphasis added).

Query: does the Act intend to punish for using a firearm as an item of barter in negotiating the purchase of a controlled substance?

## I.

Appellant Mark Phelps and his coconspirator Turnipseed needed a supply of ephedrine in the summer of 1987. They had an operative methamphetamine laboratory but needed one component, ephedrine, which was in short supply. Acting on an informant's tip, federal agent Fabiano negotiated with the conspirators and represented that he could supply the chemical if the price was right. At a later meeting, Fabiano was accompanied by Agent Paur, who agreed to pose as an associate and attempt to buy an automatic weapon.

Phelps told the agents that he was an expert in guns and had experience in converting semi-automatic MAC 10 firearms to fully automatic mode. Agent Paur showed interest and asked to buy such a weapon. Phelps declined to make an outright sale but offered to give it to Paur on delivery of the first ten pound shipment of ephedrine. The automatic pistol was displayed and was unloaded and unregistered.

The agents inspected the laboratory and weapon, obtained a search warrant, seized records and chemicals, and arrested Phelps and his coconspirator. Phelps was convicted by a jury on five counts, Count 5 being the charge of using a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1).

Kenneth D. Noel, San Diego, Cal., for defendant-appellant.

Tom Stahl, Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Before WRIGHT, FARRIS and NELSON, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Again, we must determine legislative intent in the drafting and modification of a federal penal statute. Title 18 § 924(c)(1) (1982 & Supp. V. 1987) reads:

## II.

Phelps contends that the government presented insufficient evidence to convict him under § 924(c)(1) because his use of the firearm for barter was not "in relation to" his drug trafficking offense.

Although the government concedes that Phelps carried the gun solely to exchange it for ephedrine, it asserts that a firearm's mere presence increases the danger in an illegal transaction. It contends that the statute applies whenever a gun is in any manner connected to a drug trafficking offense. We reject the government's contention.

The phrase "in relation to" is broad. Because either party's interpretation of the statute is plausible, we look to its history and purpose to ascertain the correct reading. *See, e.g., Escobar Ruiz v. INS,* 838 F.2d 1020, 1023 (9th Cir.1988). The legislative history and our prior cases indicate that § 924(c)(1) should not apply to the unusual situation presented here.

We acknowledge that the legislative history of § 924 is "sparse," *see, e.g., United States v. Moore,* 580 F.2d 360, 362 (9th Cir.), *cert. denied,* 439 U.S. 970, 99 S.Ct. 463, 58 L.Ed.2d 430 (1978), and we doubt that Congress considered the novel use of a firearm as an item of barter. The legislative record that does exist, however, suggests that the statute's purposes would not be served by its application here.

The legislative history indicates that Congress did not intend the statute to apply to all situations in which a firearm was present or added danger during a crime. The statute's original language made it a crime to "carr[y] a firearm unlawfully during the commission of any felony." 18 U.S.C. § 924(c)(2) (1982). In 1984, Congress modified the language by combining subsections 924(c)(1) and 924(c)(2). The new language requires that the firearm be used "during *and* in relation to" the crime.

In *United States v. Stewart,* 779 F.2d 538, 539–40 (9th Cir.1985), *cert. denied,* ── U.S. ──, 108 S.Ct. 192, 98 L.Ed.2d 144 (1987), we considered the legislative history and concluded that the "in relation to" language did not alter the scope of conduct covered by the statute. We found that the "earlier Congress intended to require a relation between the firearm and the underlying crime" and that the "language was added to allay explicitly the concern that a person could be prosecuted under section 924(c) for committing an entirely unrelated crime while in possession of a firearm." *Id.*

Congress' clarification demonstrates that it intended to exclude some uses in which a gun was present, "such as a gun carried in a pocket and never displayed or referred to in the course of a pugilistic barroom fight." S.Rep. No. 225, 98th Cong., 2d Sess. 314 n. 10, *reprinted in* 1984 U.S.Code Cong. & Ad.News 3182, 3492. Yet "[e]vidence that the defendant had a gun in his pocket but did not display it, or refer to it," could support a conviction where "from the circumstances or otherwise it could be found that the defendant intended to use the gun." *Id.*

We conclude that the mere presence of a firearm does not trigger the statute. Congress directed the statute at "persons who chose to carry a firearm as an offensive weapon for a specific criminal act." *Id.* We apply the principle of lenity as we construe the ambiguous term "in relation to." *See Simpson v. United States,* 435 U.S. 6, 15, 98 S.Ct. 909, 914, 55 L.Ed.2d 70 (1978); *United States v. Sherbondy,* 865 F.2d 996, 1009 (9th Cir.1988). Here, the firearm did not have a role in the crime as an offensive weapon. The firearm was not used "in relation to" the crime as a weapon would normally be used. Because Phelps used the gun only for barter, his conduct is excluded by the statute.

Our conclusion is consistent with our previous cases construing § 924(c)(1). The facts of this case fall outside *United States v. Stewart,* 779 F.2d at 540, and *United States v. Ramos,* 861 F.2d 228, 251 (9th Cir.1988). The government conceded that Phelps carried the firearm solely to exchange it for ephedrine.

In *Stewart,* we reversed a conviction under § 924(c)(1). 779 F.2d at 540. Federal agents executing a search warrant at Stewart's business premises discovered Stewart's methamphetamine laboratory. He was arrested sitting in his car in front of his residence. A search of the car uncovered an illegal sawed-off UZI rifle in the trunk. We reversed because the district court failed to instruct the jury regarding

the relational element of the crime. We stated that a firearm is used "in relation to" an offense if "the firearm facilitated or had a role in the crime, such as emboldening an actor who had the opportunity or ability to display or discharge the weapon to protect himself or intimidate others whether or not such display or discharge in fact occurred." *Id.*

In *United States v. Ramos,* 861 F.2d at 230, we applied this language from *Stewart.* In *Ramos,* coconspirators were transporting cocaine to a prospective buyer. Ramos carried a weapon in his car and reached for it when he perceived danger. We excluded inadvertent uses from the statute's coverage and found the defendant's actions were not inadvertent. We affirmed the conviction, finding sufficient evidence that the use of the firearm "emboldened" Ramos, " 'who had the opportunity ... to display or discharge the weapon to protect himself or intimidate others.' " *Id.* at 231 (quoting *United States v. Stewart,* 779 F.2d at 540). Phelps' display of the firearm that the agents knew was unloaded did not have a role in the crime or embolden the actor within the meaning of *Stewart* and *Ramos.* We conclude that his use of the weapon did not fall within section 924(c)(1).

### III.

On appeal, Phelps challenges for the first time his other convictions on the basis that the government acted outrageously by supplying him with one pound of ephedrine. We find this contention meritless. The government's conduct was not "so grossly shocking and so outrageous as to violate the universal sense of justice." *See United States v. Citro,* 842 F.2d 1149, 1152 (9th Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 170, 102 L.Ed.2d 140 (1988); *United States v. Smith,* 538 F.2d 1359, 1361 (9th Cir.1976).

We REVERSE Phelps' conviction under § 924(c)(1) and AFFIRM his other convictions.