John MULLANE, Plaintiff,

v.

Ptl. Charles KASSINGER, et al., Defendants.

No. 5:98 CV 2506.

United States District Court, N.D. Ohio, Eastern Division.

July 13, 2000.

Richard L. Henning, Henning & Yost, Massillon, OH, for Plaintiff.

Nick Tomino, Reminger & Reminger, Cleveland, OH, James A. Climer, Deborah W. Yue, Mazanec, Raskin & Ryder, Solon, OH, Richard B. Whitney, Jones, Day, Reavis & Pogue, Cleveland, OH, for Defendants.

## ORDER

GALLAS, United States Magistrate Judge.

In this civil rights claim, this court on April 21, 2000 granted defendants' motions for summary judgment, in part, dismissing two defendants, the Village of Canal Fulton, Ohio and Lawrence Township Board of Trustees. Several claims of plaintiff John Mullane against Officers Kassinger and Vinez were also dismissed except for: John Mullane's claim of unlawful entry by Officer Kassinger; deprivation of liberty due to unlawful arrest; excessive force in effecting arrest; deprivation of First Amendment rights; and supplemental state claims. Officer Kassinger has moved for reconsideration or alternatively to alter or amend judgment.

### I.

The events which eventually led to this lawsuit began with the theft of either an eight or twelve pack of beer from a Canal Fulton convenience store on December 26, 1997. Witnesses described the culprit to the Canal Fulton police including the description of his vehicle and license plate. The license plate was traced to a vehicle belonging to James Mullane. James lived with his brother John at that time. At approximately 11:45 p.m. on December 26, 1997 Officer Kassinger of the Canal Fulton Police Department knocked on the door of John Mullane's house. John Mullane permitted Officer Kassinger into the home and telephoned to see if he could locate his brother for questioning by the police. John could not find his brother and told Officer Kassinger that he would give his

brother a message that Officer Kassinger wanted to talk to him, and Officer Kassinger left. Later at approximately 1:30 a.m. Officer Kassinger observed the vehicle that had been reported from the beer theft at the Mullane residence. Officer Kassinger then advised the police radio dispatcher that he was returning to the Mullane residence. He also called Radio Officer Ken Vinez from neighboring Lawrence Township and informed Officer Vinez that he was going to the Mullane residence in order to investigate a theft. Lawrence Township police serve as a backup to Canal Fulton police pursuant to a mutual aid agreement. It was approximately 1:45 a.m. on December 27, 1997 when Officer Kassinger returned to the Mullane residence. He knocked on the front door and asked John Mullane to speak with his brother James. John Mullane responded, "Just a minute, let me go get him," referring to James. John Mullane did not invite Kassinger into the home, and at the time Officer Kassinger stood outside the door. John Mullane turned and walked away from the door and Officer Kassinger claims that John did not shut the door, but left it open. John Mullane, however, states that the front door was open, but only about two inches, so that Officer Kassinger could not walk through the doorway without pushing the door open himself.

John Mullane proceeded upstairs to waken his brother, James, who was in bed, and when he returned downstairs, Officer Kassinger was standing inside the house. Officer Kassinger interviewed James and placed him under arrest after James admitted taking the beer from the convenience store.

Around this time Officer Vinez, responding to Officer Kassinger's radio call, arrived at the Mullane residence. According to John Mullane, Officer Vinez simply came up to the door and walked inside. Officer Kassinger then advised Officer Vinez that he was placing James Mullane under arrest and was about to handcuff

James. At that time John Mullane instructed the officers to leave his home. According to defendants John Mullane began yelling and approaching them in a threatening manner. John Mullane, however, claims that he was merely pointing to the door while demanding that the officers leave his home. John Mullane claims that Officer Vinez proceeded to attack him, knocking him to the floor, striking him and Officer Kassinger threatened to spray him with mace. John Mullane denies that he was attempting to attack the officers.

John Mullane was handcuffed, driven to the Canal Fulton Police Department and handed a complaint for resisting arrest signed by Officer Kassinger. Both brothers were then transported to the Massillon City Jail. The Village of Canal Fulton proceeded to prosecute the case against John Mullane, but before doing so, filed a motion to reduce the criminal charges from resisting arrest, a first degree misdemeanor, to disorderly conduct, a minor misdemeanor. The case proceeded to trial in the Massillon Municipal Court on the disorderly conduct charge against John Mullane where he was acquitted. This case in federal district court against the officers and their political subdivision employers then followed.

## II.

This Court previously found in April 2000 a potential violation of First Amendment rights due to retaliation when John Mullane exercised his right to demand that the officers leave his home, assuming that entry was obtained without voluntary consent. See *Knox v. Southwest Airlines*, 124 F.3d 1103, 1108–09 (9th Cir.1997)(arrest to curb constitutionally-protected criticism of officers); *City of Houston, Texas v. Hill*, 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987) (municipal ordinance making it unlawful to interrupt officer was unconstitutionally overbroad under First Amendment.).

 Also potential violations of the Fourth Amendment were found for warrantless entry and unlawful seizure of John Mullane, and excessive force in arrest. See *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 2047–48, 36 L.Ed.2d 854 (1973); *U.S. v. Erwin*, 155 F.3d 818, 823 (6th Cir.1998), *cert. denied*, 525 U.S. 1123, 119 S.Ct. 906, 142 L.Ed.2d 904 (1999) (consent to search); *Albright v. Oliver*, 510 U.S. 266, 275, 114 S.Ct. 807, 814, 127 L.Ed.2d 114 (1994) (J. Scalia concurring) (Fourth Amendment outlines process due for claims of seizure of person and excessive force).

 With respect to the claim of Fourth Amendment unlawful entry, warrantless entry is not unlawful if there is voluntary consent to enter. The voluntariness of the consent is a question of fact to be determined under the "totality of the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. at 227, 93 S.Ct. at 2047–48. Officer Kassinger had previously relied on the case *U.S. v. Garcia*, 997 F.2d 1273 (9th Cir.1993), for the proposition of implied consent to enter. In denying Officer Kassinger's motion for summary judgment, the court relied on the Sixth Circuit case of *U.S. v. Erwin*, which required that the consent be unequivocal, specific and an intelligent decision. *Id.* at 155 F.3d at 823.

 There is no dispute that Officer Kassinger did not ask permission to enter John Mullane's home at approximately 1:45 a.m. when he appeared to question John Mullane's brother about the theft of an eight or twelve pack of beer from a local convenience store. This Court distinguished defendants' reliance on *Garcia* because the facts in that case demonstrated an unequivocal, specific and intelligent decision with the statement, "okay," stepping back and nodding to the officers in response to the request, "we're police officers, we'd like to talk to you." Officer Kassinger relies on implied consent, and argues implied consent was present because when John Mullane turned from the door he did not tell Officer Kassinger not enter the house, or tell him to "wait here."

Officer Kassinger argues that the prior denial of his motion for summary judgment should be overturned on the basis of the case of *Gerald M. v. Conneely*, 858 F.2d 378 (7th Cir.1988), which he argues involved nearly identical circumstances under which the Seventh Circuit found implied consent, despite the resident's initial response to the police officer to "wait here."[1] Officer Kassinger states that when he came to the door of John Mullane's house and asked to speak with James Mullane, he was outside the front door by himself, and he did not threaten or intimidate John Mullane in any way. Officer Kassinger also argues that when John Mullane returned with his brother, John Mullane did not verbally object to the officer entering the house, but merely sat on

---

1. The Seventh Circuit found implied consent from the following circumstances:

 We will determine whether it was reasonable for Officer Conneely to believe that Mrs. Macek had voluntarily consented to his entry into her home. [citation omitted]. The fact that Mrs. Macek said "wait here" or something similar gives us pause, but only for a moment. The material facts are undisputed. Her subsequent silence and apparent acquiescence persuades us that Conneely's presence in the home was not against Mrs. Macek's apparent wishes. Mrs. Macek was not coerced. She was in her home and was confronted by a single police officer. (Another officer accompanied Conneely to the Macek home, but he did not enter the house.) Conneely did not threaten nor intimidate her in any way. He merely stated that he wished to talk with the boys. Mrs. Macek did not verbally object to the entrance. She did not act astonished nor did she physically respond in any way that might relay the message that she disapproved of his movement. She simply waited for her sons and warned Conneely of a puppy in the kitchen. Assuming this was a search or seizure under the fourth amendment, we agree with the district court that the single assertion that Mrs. Macek was surprised that Conneely entered the home falls well short of demonstrating that under the totality of the circumstances, her consent was not voluntary.

 *Conneely*, 858 F.2d at 384–85.

the couch. He contends that John Mullane's subsequent silence and apparent acquiescence indicated that Officer Kassinger's presence in the house was not against John Mullane's wishes.

John Mullane picks up where Officer Kassinger left off, pointing out that when Officer Vinez appeared in his home also without invitation, he instructed Officers Vinez and Kassinger to leave his home. ▮ Nonetheless, implied consent as evidenced in *Conneely* is contrary to the Sixth Circuit's criteria for voluntary consent, which must be unequivocal, specific and intelligently given. Moreover, as *Erwin* illustrates, as a general rule an affirmative response is required to a specific request to enter or search. *Id.*, 155 F.3d at 823. John Mullane's failure to object immediately to Officer Kassinger's entry, after the officer was told, "just a minute" does not constitute voluntary consent under these criteria and presents a potential violation of the Fourth Amendment's protection against nonconsensual warrantless search.

Officer Kassinger's arguments, however, require reopening of this Court's earlier analysis of the issue of qualified or good faith immunity. This defense shields government officials from liability in their individual or personal capacities to the extent their conduct did not violate a "clearly established" constitutional right. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct.

2727, 2738, 73 L.Ed.2d 396 (1982). This Court has found that *Conneely* is not the only case in which implied consent has been recognized. Similar to *Conneely*, in *U.S. v. Garcia*, 56 F.3d 418, 424 (2nd Cir. 1995), that court reaffirmed its position that consent to search a residence, "can be found from an individual's words, acts or conduct." And see *U.S. v. Deutsch*, 987 F.2d 878, 883 (2nd Cir.1993); *Krause v. Penny*, 837 F.2d 595, 597 (2nd Cir.1988). The Ninth Circuit also had recognized implied consent in dicta appearing in *U.S. v. Impink*, 728 F.2d 1228, 1232 (9th Cir.1984) (the burden is heavier when consent is not explicit). In addition many years prior to *Erwin*, the Sixth Circuit similarly had ruled that consent to be voluntary, must be "unequivocal, specific and intelligently given, uncontaminated by any duress, coercion, and is not lightly to be inferred." *Simmons v. Bomar*, 349 F.2d 365, 366 (6th Cir.1965).[2] However, later in *U.S. v. Shaibu*, 920 F.2d 1423, 1426 (9th Cir.1990), the Ninth Circuit explained that "free and voluntary consent cannot be found by a showing of mere acquiescence to a claim of lawful authority," and in the Sixth Circuit in *U.S. v. McCaleb*, 552 F.2d 717 (6th Cir.1977), that portion of *Simmons'* holding that consent was not to be "lightly inferred" was deleted, and the court found the lack of "oral acquiescence" was an important factor in concluding that there

---

**2.** Voluntary consent was found in *Simmons* based on the fact that the defendant, although not recognizing the officer, told the officer to "come in", and when the officer stood outside the door he said, "Kenneth, we've got information you've got a lot of stolen stuff in this house," to which defendant responded he knew nothing about it and after he was told the police would obtain a warrant he said, "I don't know what you're hunting for, if you're going to do that, no reason for that, go ahead and look." *Simmons v. Bomar*, 230 F.Supp. 226, 227 (M.D.Tenn.1964). The district court reasoned:

> In some instances it might be better practice for police officers to announce their authority and purpose before entering a dwelling. However, under the circum-

stances disclosed by the record it cannot be said that the conduct of these officers constituted an unlawful or unreasonable entry. They neither used nor threatened force or violence; they did not employ fraud, disguise, or deception. Consequently, that [Officer] Morrison thought Simmons did not immediately recognize him, does not render the invitation of Simmons to 'come in' any less effective in validating the subsequent entry. Nevertheless, it is clear that so far Simmons had not waived his right to require a search warrant, and had the police officers begun a search without further consent such action would have been unlawful and any evidence disclosed would have been inadmissible. (Citation omitted).

*Id.*, at 228.

was no voluntary consent to search. *Id.* at 721.

From the objective standpoint as required pursuant to *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the determination whether a constitutional right was "clearly established" requires first, reference to: the decisions of the Supreme Court; then the decisions of the Sixth Circuit and other courts within the Sixth Circuit; and finally decisions of other circuits. *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir.2000). The contours of the right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right. *Gardenhire*, 205 F.3d at 311. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, ... but it is to say that in light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); *Bass v. Robinson*, 167 F.3d 1041, 1051 (6th Cir.1999).

The Supreme Court has no clear precedent on this issue of implied consent. This lack of ultimate guidance at this time is demonstrated in the Second Circuit's rationale in *Garcia*, which found the Ninth Circuit's decision in *Shaibu* effectively eliminated implied consent by requiring "a specific request by police to enter a home" to be "flatly inconsistent with *Schneckloth*." *Garcia*, 56 F.3d at 424; *Shaibu*, 920 F.2d at 1428.

The Sixth Circuit, though, has provided clear guidance from a long history requiring that consent must be "unequivocal, specific, and intelligently given." Officer Kassinger's request to John Mullane to see or speak with his brother James was not a request to enter the house, and John Mullane's prior cooperation and silent acquiescence to entry cannot be reasonably construed as a voluntary and intelligent decision.

Consequently in the Sixth Circuit, only in a rare and atypical situation will consent be merely implied or inferred. But in any case mere acquiescence is not sufficient, especially when there has been no specific request to enter the house. The fact that John Mullane failed to object to Officer Kassinger's uninvited and warrantless entry into his home neither establishes consent nor does it confer immunity, because neither John Mullane's conduct nor statements were unequivocal or specific to indicate an intelligently made decision of consent to enter as required under the Fourth Amendment. Officer Kassinger's conduct to the contrary arguably violated this " clearly established" law. Officer Kassinger's argument that the resident is required to affirmatively respond to the officer to remain outside is in derogation of Fourth Amendment principles.

## III.

Finally, Officer Kassinger argues that he was entitled to summary judgment in his favor with respect to John Mullane's claims arising out of his arrest. Officer Kassinger argues that the record is clear from portions of the prior state court transcript of proceedings in the Massillon Municipal Court that Officer Kassinger did not take part in John Mullane's arrest and did not use any force against him. Officer Kassinger states that at the time of John Mullane's arrest Officer Kassinger was engaged in arresting James Mullane, whereas John Mullane was arrested by Officer Vinez, and if any force was used against John Mullane, it was used by Officer Vinez.

John Mullane counters that even if Officer Kassinger was correct and only Officer Vinez used force against him, Officer Kassinger participated in John Mullane's unlawful arrest by condoning Officer Vinez' action at the scene and by subsequently filing criminal charges against him.

There is no *respondeat superior* under civil rights provisions. For Officer

Kassinger to be held liable for the acts of another, he must have "at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending officer[ ]." *Hicks v. Frey,* 992 F.2d 1450, 1455 (6th Cir.1993); and see *Birrell v. Brown,* 867 F.2d 956, 959 (6th Cir.1989); *Leach v. Shelby County Sheriff,* 891 F.2d 1241, 1246 (6th Cir.1989), *cert. denied* 495 U.S. 932, 110 S.Ct. 2173, 109 L.Ed.2d 502 (1990). Active behavior is required in condoning the alleged unconstitutional behavior, not tacit approval in a passive role. *Bass v. Robinson,* 167 F.3d at 1048.

 John Mullane does not controvert the claim that Officer Kassinger did not use direct force against him. However, in his affidavit he states that after Officer Vinez tackled him, Officer Kassinger threatened to spray him with mace. This suffices for purposes of summary judgment that Officer Kassinger condoned the use of force and actively participated in it. The portion of the transcript provided in Officer Kassinger's motion for reconsideration contains John Mullane's testimony from state proceedings involving Officer Vinez's actions only; it does not contain testimony to the effect that Officer Kassinger was merely standing by. Therefore, the factual issue cannot be resolved in Officer Kassinger's favor on the basis of the alleged inconsistency between this earlier testimony from state court and the affidavit opposing summary judgment.

The other claims stemming from John Mullane's arrest also cannot be dismissed against Officer Kassinger. Officer Kassinger witnessed John Mullane's arrest, whether or not he participated in it, and was responsible for filing criminal charges against John Mullane which led to his criminal trial and subsequent acquittal. Officer Kassinger's subsequent initiation of prosecution of John Mullane arguably reaffirmed Officer Vinez's actions and arguably demonstrated acquiescence to these actions, such as retaliation under the First Amendment. Accordingly, the April 21,

2000 judgment will not be amended, the partial denial of summary judgment will stand and the case will proceed to trial on the remaining issues.

IT IS SO ORDERED.