UNITED STATES of America,
Plaintiff–Appellee,

v.

Charles S. HAMMETT, Defendant–Appellant.

No. 00–10065.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 15, 2000

Filed Jan. 10, 2001

Alexander Silvert, and Loretta A. Faymonville, Assistant Federal Public Defenders, Honolulu, Hawaii, for the defendant-appellant.

Kenneth M. Sorenson, Assistant United States Attorney, Honolulu, Hawaii, for the plaintiff-appellee.

Before: HUG, TROTT, and WARDLAW, Circuit Judges.

TROTT, Circuit Judge:

This appeal concerns the district court's order denying defendant Charles Hammett's ("Hammett") motion to suppress evidence obtained by the police during an allegedly illegal search of his home. Hammett was arrested for cultivating marijuana, in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(A), after police seized 2430 marijuana plants and over three pounds of marijuana from Hammett's residence. Hammett was convicted pursuant to a conditional guilty plea agreement. Hammett contends that the search warrant was invalid because it was premised on: (1) a partially false affidavit; and (2) observations made by police officers while in the curtilage of his home in violation of his Fourth Amendment rights. We have jurisdiction pursuant to 28 U.S.C. § 1291, and AFFIRM the district court.

## BACKGROUND

On April 7, 1999, Officers Correia and Kerr participated in a marijuana eradication mission on the Island of Hawaii. The officers acted as "spotters," searching for marijuana plants from a government-employed helicopter. Both officers had received extensive training and had amassed considerable experience in eradication missions.

Around 9:30 a.m., while flying at an altitude of approximately 500 feet, Officers Correia and Kerr noticed a distinct green color beneath the translucent roof of Hammett's residence that in their experience indicated the presence of marijuana plants. Officer Correia additionally noted several black circular shapes, which he suspected were black plastic growing pots. Despite these observations, the officers subsequently acknowledged under oath that from their vantage point in the air they were unable to confirm their suspicion that marijuana was being cultivated at the Hammett residence. Seeking to investigate their observations, the officers instructed the pilot to land the helicopter approximately 150 yards from Hammett's home on an adjoining parcel of land.

Hammett's property is located in a wooded, secluded area. There is an unimproved dirt road leading to the house, the entrance to which is marked by a sign prohibiting trespassing and two steel poles connected by a chain. The Hammett residence is constructed of overlapping sheets of corrugated metal, with a semitransparent plastic roof. The home has just one door, which is next to the home's only window.

In approaching the Hammett residence, however, the officers did not use the dirt road leading to the house, and consequently did not see the "no trespassing" sign posted at its entrance. Instead, the officers took a straight path to the home from where the helicopter had landed, crossing an unfenced and virtually unobstructed area of land. Officers Correia and Kerr approached Hammett's residence on foot for the purpose of contacting the occupants and possibly conducting an investigation regarding the officers' previous observations.

Once the officers reached the home, they knocked on the door and shouted "Police." When they received no answer, the officers looked through the window next to the door, but saw no inhabitants. Officer Kerr again yelled through the window, and again received no answer.

The officers then proceeded to circle the house, calling out "Police" and knocking on the walls as they went. The officers testified that they circled the home for the purposes of: (1) locating a back entrance; (2) contacting people behind the structure willing to speak with them; and (3) ensuring their safety. When the officers were approximately ten to fifteen feet away from having completely circled the home, Officer Kerr observed a small crack in the overlapping pieces of corrugated steel siding forming the walls of Hammett's residence. The crack was one-half to one inch wide. Through the crack, the officers ob-

served at least three marijuana plants inside the residence.

After viewing the marijuana plants, the officers returned to the front door and noticed for the first time that a metal locking device on the inside of the door was in the closed position. The officers testified that this fact led them to believe someone was in the home.

Officer Correia then contacted the command post and Detective Bolos, who arrived at the Hammett residence roughly one hour later. Prior to Detective Bolos's arrival, Officer Kerr left the scene via helicopter and was replaced by Officer Ishikawa. Also during that time, Hammett arrived at the property and was placed under arrest for cultivating marijuana.

Officer Correia met Detective Bolos at the entrance of the driveway to Hammett's residence. Neither Officer Correia nor Detective Bolos recalled seeing a "no trespassing" sign. Officer Correia then relayed all pertinent information to Detective Bolos that would enable Detective Bolos to compose an affidavit for the purpose of acquiring a warrant to search Hammett's property. The affidavit alleged, in pertinent part:

> OFFICER CORREIA told your affiant that on April 07, 1999, at approximately 0930 hours, while participating in a marijuana eradication mission within a government employed helicopter at an altitude in excess of 500 feet, he did observe in excess of three marijuana plants being cultivated within a residence in the Hawaiian Acres subdivision in the Puna District.
>
> OFFICER CORREIA also informed your affiant that he then landed on an adjacent empty lot and approached the building and knocked on the door trying to contact the owner and secure a consent to search the premises for marijuana. While doing this OFFICER CORREIA said the exterior walls to the building is partially split (sic) and the interior can be seen by anyone standing from the outside looking in. It was

then he then observed the marijuana plants being cultivated from within.

A search warrant was issued pursuant to the affidavit later that day, leading to the seizure of 2430 marijuana plants and 3.6 pounds of marijuana from Hammett's home.

On June 28, 1999, Hammett filed a motion to suppress the evidence seized from his residence. Specifically, Hammett claimed that the warrant affidavit, when stripped of its alleged falsities and illegally procured statements, failed to establish sufficient probable cause to support the issuance of a warrant.

After an extensive hearing, which included the testimony of Officers Correia, Kerr, and Bolos, the district court denied Hammett's motion to suppress. The court did, however, acknowledge that the warrant affidavit incorrectly represented that the officers observed marijuana plants while flying over Hammett's residence. The court stated that what the officers saw from the air only raised a suspicion as to the presence of marijuana, which did not amount to probable cause. Notwithstanding this finding, the district court ultimately upheld the validity of the warrant based on the observations made by the officers while on Hammett's property.

## DISCUSSION

### A. Standard of Review

■ A district court's conclusions of law regarding a motion to suppress are reviewed *de novo*. *See United States v. Wright,* 215 F.3d 1020, 1025 (9th Cir.2000), *cert. denied,* — U.S. —, 121 S.Ct. 406, 148 L.Ed.2d 313 (2000). A district court's findings of fact, however, are reviewed only for clear error. *See United States v. Noushfar,* 78 F.3d 1442, 1447 (9th Cir. 1996).

### B. The District Court Properly Denied Hammett's Motion to Suppress

■ The exclusionary rule precludes law enforcement officers from using "infor-

mation obtained in violation of the Fourth Amendment to establish probable cause justifying a search." *United States v. Roberts,* 747 F.2d 537, 541 (9th Cir.1984). Hammett contends that the exclusionary rule is applicable to the instant case for two reasons: (1) the warrant was improperly based on a false statement in the warrant affidavit; and (2) Officer Correia's observation of marijuana through the crack in the wall of Hammett's residence was the product of an unconstitutional search without a warrant and cannot be relied upon to establish probable cause. Hammett is mistaken on both counts.

### 1. The Misstatement in the Affidavit Does Not Invalidate the Warrant

The district court properly rejected Hammett's argument that the warrant was *ipso facto* invalid because it was premised upon a partially false affidavit. As noted by the district court, the statement in the affidavit providing that Officer Correia observed marijuana plants while flying over the Hammett residence is undisputably false. The government argues that Hammett waived his ability to challenge the veracity of this statement by failing to raise the issue in the district court. In the alternative, the government contends that the misstatements in the affidavit were made negligently, rather than intentionally, and therefore do not invalidate the entire warrant. Hammett counters that although he failed to file the proper motion challenging the veracity of the warrant affidavit, the district court was justified in conducting a *de facto* review of the warrant affidavit. Thus, Hammett argues that the accuracy of the warrant affidavit is properly before this court, and urges that we invalidate the warrant on account of the false statements therein. We need not address the procedural question of whether Hammett can challenge the truthfulness of the warrant affidavit on appeal, however, because Hammett's substantive claim lacks merit.

■■ In *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme Court addressed at length whether a false statement by a government affiant invalidates a search warrant. The Court held that a defendant is entitled to a suppression hearing only upon a substantial preliminary showing that a governmental agent intentionally or recklessly made false statements necessary to the finding of probable cause. *Id.* at 171, 98 S.Ct. 2674. This principle has two implications: (1) "misstatements resulting from negligence or good faith mistakes will not invalidate an affidavit which on its face establishes probable cause," *United States v. Smith,* 588 F.2d 737, 740 (9th Cir.1978); and (2) even if the affiant's statements are made intentionally or recklessly, such statements will not invalidate the entire warrant provided "there remains sufficient content in the warrant affidavit to support a finding of probable cause." *Franks,* 438 U.S. at 172, 98 S.Ct. 2674. Both principles are applicable to the case at bar.

■■ First, the record contains nothing to suggest that the misstatement in the warrant affidavit regarding Officer Correia's aerial observation of marijuana plants was made intentionally or recklessly. The Court in *Franks* placed special emphasis on the strict requirement of proof, finding that "[t]here must be allegations of deliberate falsehood or of reckless disregard for the truth, *and those allegations must be accompanied by an offer of proof.*" *Id.* at 171, 98 S.Ct. 2674 (emphasis added). In this case, Hammett offered no proof supporting his allegation of intentional falsity. To the contrary, the record offers abundant evidence suggesting that the misstatement concerning Officer Correia's observations from the helicopter was the product of an innocent mistake. For instance, Officer Correia did not compose the affidavit. He delegated this duty to Detective Bolos, who had not accompanied Officer Correia in the helicopter and had no personal knowledge of what Officers Correia and Kerr had observed. In informing Detective Bolos of the information necessary to procure the warrant, it is highly probable that there was a miscom-

munication between Officer Correia and Detective Bolos that led to the misstatement in the affidavit. We therefore reject the position that the warrant is invalid due to the allegedly deliberate falsehoods contained in the warrant affidavit.

■ Second, even if the misstatements in the warrant affidavit were inserted intentionally or recklessly, the remainder of the affidavit contains sufficient evidence to support a finding of probable cause. The Court in *Franks* held that if "material that is the subject of the alleged falsity or reckless disregard is set to one side, [and] there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Id.* at 171–72, 98 S.Ct. 2674. As discussed below, Officer Correia's observation of marijuana through the crack in the wall of Hammett's residence did not violate Hammett's Fourth Amendment rights, and therefore was properly included in the affidavit. Thus, even if we disregard the statements concerning Officer Correia's observations from the helicopter, the remaining statements in the affidavit, standing alone, present sufficient evidence to support a finding of probable cause. Accordingly, the warrant was properly attained and the evidence seized as a result thereof need not be suppressed.

2. *Officer Correia's Observations From the Ground Were Not Obtained in Violation of Hammett's Fourth Amendment Rights*

■ The Fourth Amendment protects the rights of people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures. *See United States v. Place,* 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). "Nowhere is the protective force of the fourth amendment more powerful than it is when the sanctity of the home is involved." *Los Angeles Police Protective League v. Gates,* 907 F.2d 879, 884 (9th Cir.1990). The Supreme Court has extended the protections afforded by the Fourth Amendment to the curtilage of a house, which is defined as "the area to which extends the intimate activity associated with the sanctity of a man's home and the privacies of life." *Oliver v. United States,* 466 U.S. 170, 180, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984) (internal quotations omitted).

Hammett contends that the observations made by Officers Correia and Kerr while standing within the curtilage of his home were made in violation of his Fourth Amendment rights, and were wrongfully relied upon by the magistrate in issuing the search warrant. Hammett's argument is threefold: (a) the officers had no right to approach his home in an attempt to investigate their suspicions; (b) the officers violated his Fourth Amendment rights by leaving the front door and circling his home; and (c) the marijuana plants were not in the plain view of the officers. We address and reject each argument in turn.

a. *Entering the curtilage*

■ Officer Correia did not violate Hammett's Fourth Amendment rights by entering the curtilage of Hammett's home. Law enforcement officers may encroach upon the curtilage of a home for the purpose of asking questions of the occupants. We recognized this principle in *Davis v. United States,* 327 F.2d 301 (9th Cir.1964), stating that anyone may "openly and peaceably knock [on an individual's door] with the honest intent of asking questions of the occupant thereof—whether the questioner be a pollster, a salesman, or an officer of the law." *Id.* at 303. We solidified our commitment to this principle in *United States v. Hersh,* 464 F.2d 228, 230 (9th Cir.1972), where we held that observations made by two law enforcement officers standing on the front porch of the defendant's home while attempting to speak with the occupants did not violate the Fourth Amendment. *See also United States v. Garcia,* 997 F.2d 1273, 1279 (9th Cir.1993) ("We have held that officers walking up to the front door of a house can look inside through a partially draped open

window without conducting a Fourth Amendment search.").

Hammett attempts to distinguish the instant case from these precedents on the ground that he posted a "no trespassing" sign at the entrance to his driveway, which Hammett contends was sufficient to apprise the public of his desire to keep others off his property. The thrust of Hammett's argument comes from our statement in *Davis* suggesting that officers may only enter the curtilage of a home to speak with its occupants in the absence of "express orders from the person in possession against any possible trespass...." *Davis,* 327 F.2d at 303. This argument, however, is inapposite to the facts at hand.

While it is true that Hammett posted a no trespassing sign at the entrance of his driveway, the officers were unaware of the sign because they did not approach the residence by way of the driveway. Rather, the officers approached Hammett's residence by crossing an area of land directly between the landing site for the helicopter and Hammett's front door. The photographs provided by Hammett illustrate an unobstructed path from the landing site to the home, on which no signs were posted. Hammett's allegation that the officers chose this path to "intentionally avoid[ ] learning of Hammett's expressed and open desire to ward off trespassers" is unsubstantiated. The photographs supplied by Hammett clearly illustrate that the area where the officers set the helicopter down was the closest open area to Hammett's home and, as such, offered a logical landing site. Thus, we reject Hammett's arguments on this point.

b. *Circling the home*

 Hammett next argues that the officers violated his Fourth Amendment rights by moving away from his front door and circling his house. Our precedent demonstrates otherwise. Hammett's allegation that the police could not legally move away from the front door is squarely at odds with our decision in *Garcia,* in which we held, "[t]his circuit and other circuits have [ ] recognized that officers must sometimes move away from the front door when they are attempting to contact the occupants of a residence. Generally, the subsequent discovery of evidence in plain view does not violate the Fourth Amendment." *Garcia,* 997 F.2d at 1279.

We bolstered our holding in *Garcia* by noting the First Circuit case of *United States v. Daoust,* 916 F.2d 757 (1st Cir. 1990), in which the court held that if the front door is inaccessible, "there is nothing unlawful or unreasonable about going to the back of the house to look for another door, all as part of a legitimate attempt to interview a person." *Id.* at 758. We also relied upon the Eighth Circuit's holding in *United States v. Anderson,* 552 F.2d 1296 (8th Cir.1977), in which the court stated, "[w]e cannot say that the agents' action in proceeding to the rear after receiving no answer at the front door was so incompatible with the scope of their original purpose that any evidence inadvertently seen by them must be excluded as the fruit of an illegal search." *Id.* at 1300.

To the extent our previous holdings have failed squarely to resolve this issue, we now make it clear that an officer may, in good faith, move away from the front door when seeking to contact the occupants of a residence.

Here, Officer Correia testified that he and Officer Kerr walked around the house in an attempt to locate someone with whom they could speak. Officer Kerr additionally stated that he circled the house with the intent of locating another door and "for officer safety reasons." Thus, the officers' actions in the present case were entirely within the purview of the law, and did not run afoul of the Fourth Amendment.

c. *Viewing the marijuana plants*

 The marijuana plants observed by Officers Correia and Kerr while circling the Hammett residence were in plain view, and thus were properly incorporated into the warrant affidavit for purposes of estab-

lishing probable cause. "It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." *Harris v. United States,* 390 U.S. 234, 236, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); *see also United States v. Brown,* 470 F.2d 1120, 1122 (9th Cir.1972). To fall within the plain view exception, two requirements must be met: (1) the officers must be lawfully searching the area where the evidence is found; and (2) the incriminatory nature of the evidence must be immediately apparent. *See Roe v. Sherry,* 91 F.3d 1270, 1272 (9th Cir.1996).

■ Both requirements are satisfied here. Officer Correia and Officer Kerr were lawfully present at the side of Hammett's home when they observed the marijuana plants. As noted in the district court's findings of fact, the officers were able to view the marijuana plants through the crack from a distance of approximately five to six feet without making any contortions. Upon looking into the home, the officers' extensive training and expertise made the incriminatory nature of the marijuana plants immediately apparent. After reviewing the record, including the photographs submitted by both parties, we cannot say the district court's factual determinations on this issue were clearly erroneous.

Because Officer Correia's observation of marijuana plants through the crack in Hammett's wall did not violate Hammett's Fourth Amendment rights, the inclusion of this observation in the warrant affidavit does not trigger the protections afforded by the exclusionary rule.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.