**UNITED STATES of America, Plaintiff–Appellee,**

v.

**James VESIKURU, Defendant–Appellant.**

No. 01–30362.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 11, 2002.

Filed Dec. 31, 2002.

David B. Bukey, Seattle, WA, for the defendant-appellant.

Ye–Ting Woo, Assistant United States Attorney, Seattle, WA, for the plaintiff-appellee.

Before: BROWNING, FISHER, and TALLMAN, Circuit Judges.

TALLMAN, Circuit Judge:

James Vesikuru appeals the district court's denial of his motion to suppress drug evidence found in his residence by authority of a search warrant. We conclude that the anticipatory warrant was facially valid because it adequately incorporated the supporting affidavit that established probable cause and articulated the conditions precedent to the warrant's execution. The searching officers were fully briefed on the restrictions found in the affidavit, and the district court correctly concluded after an evidentiary hearing that the officers complied with all of the required conditions. The district court properly ruled that incriminating evidence found inside the residence need not be suppressed. We affirm.

I

On September 26, 2000, a drug-sniffing dog alerted agents of the California Bureau of Narcotics Enforcement (BNE) to

the possible presence of drugs inside a package being processed at a retail mail center. BNE agents opened the box after obtaining a search warrant and discovered a microwave oven with a jar inside containing more than 32 fluid ounces of a liquid believed to be phencyclidine (PCP). The package was addressed to "Pearl Jackson" at 5653 26th Ave. S.W., Seattle, WA (hereinafter "West Seattle residence"). It had no return address.

Drug Enforcement Administration (DEA) agents and local police officers assigned to a narcotics task force in Seattle were contacted, and they arranged to make a "controlled delivery" of a similar mock package to the West Seattle residence.[1] On September 28, task force agent Jonathan Haley applied for a state court search warrant using preprinted forms commonly employed in such matters.

In his supporting affidavit of probable cause provided to the court, Haley requested "an anticipatory Search Warrant" for the West Seattle residence. In relevant part, the affidavit set forth the following:

> Based on the totality of the facts your affiant is requesting the court to ... Authorize an anticipatory Search Warrant for the [West Seattle] residence once the package has been accepted and observed to have been taken into the residence and that Officers are authorized to either immediately or upon activation of the radio transmitter[2] make entry into the residence located at 5653 26th Ave. SW, Seattle, WA. 98106.

King County District Court Commissioner A.C. Harper authorized the warrant. The preprinted warrant form did not state the above conditions precedent for the search, but the warrant did indicate that probable cause to search was based "[u]pon the sworn complaint" (the Haley affidavit), which was attached to the warrant as a supplemental form.

With both the search warrant and its supporting affidavit in hand, the agents conducted a pre-operational or "raid" briefing. At all relevant times prior to and during the search of Vesikuru's home, the affidavit physically accompanied the search warrant. DEA Special Agent Daniel Mancano, who led the operation, testified that he read both the warrant and the attached affidavit. He considered the language in the affidavit binding, and he briefed the other agents before surveillance began that entry into the West Seattle residence was not permissible until the package was first accepted by an occupant and then observed to be taken inside the residence.

On the afternoon of September 28, the operation began. A police agent posing as a commercial package carrier delivered the mock package to the West Seattle residence. Sabrina Castro, Vesikuru's girlfriend and co-defendant, answered the door and accepted the package. However, she did not bring the package into the house. Instead, she placed the package on the front porch. None of the agents conducting surveillance had a view of the front porch because Castro's minivan was parked in the driveway and blocked the agents' line of sight. After the delivery, agents twice observed Castro walk back

---

1. PCP is a highly toxic substance. Because of the hazardous nature of the drug, agents decided against delivering the original package. Instead, they created a mock package for delivery to the West Seattle residence. Like the original package, the mock package contained a jar of liquid resembling PCP, which was wrapped with duct tape and placed inside a microwave oven.

2. Haley's supporting affidavit also requested authorization to insert a radio transmitter device in the mock package, which would activate when the package was opened.

and forth from the porch to the minivan. Returning to her minivan for the second time, Castro started the engine and pulled out of the driveway. As she drove away, the radio transmitter placed inside the package went off, alerting agents that the mock package had been opened. Once the vehicle left the driveway, Agent Mancano observed that the package was no longer on the front porch. Approximately three minutes passed from the time the package was delivered until Castro's departure.

Surmising that Castro might have taken the package with her, Agent Mancano directed other agents to pull over the minivan. They did, and quickly determined that the package was not in the van. Because the package was not in the van and was no longer on the porch, Agent Mancano then concluded that the package had been taken into the residence. He also concluded, based on the transmitter signal, that the package must have been opened by another person inside the house. He therefore authorized entry into the house. As agents approached, Vesikuru left the house and attempted to flee from the scene. He was stopped and arrested. Agents subsequently searched the home under the warrant's authority and found the mock package open on the living room floor and the glass jar broken into small pieces. Its contents had apparently been disposed of in a garbage can or the sink. More importantly, the agents discovered PCP, crack cocaine, and marijuana, among other incriminating evidence.

Vesikuru was charged with conspiracy to distribute PCP, attempted possession of PCP with intent to distribute, and possession of crack cocaine with intent to distribute. After the United States district court denied his motion to suppress the evidence, Vesikuru conditionally pled guilty to conspiracy to distribute PCP in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846. *See* Fed. R.Crim. Pro. 11(a)(2). He

was sentenced to serve 121 months. He now appeals.

■ We review de novo the conclusions of law made by the federal district court in denying the motion to suppress evidence. *United States v. Hammett,* 236 F.3d 1054, 1057 (9th Cir.2001). Factual findings based on evidence adduced at the suppression hearing are reviewed for clear error. *Id.*

## II

Vesikuru first challenges the facial validity of the warrant, arguing that it is void for failure to state on its face the conditions precedent to the search. He correctly states the law of this Circuit, but misapplies the law in seeking to invoke its protection.

■ The execution of an anticipatory search warrant is conditioned upon the occurrence of a triggering event. If the triggering event does not occur, probable cause to search is lacking. *See, e.g., United States v. Rowland,* 145 F.3d 1194, 1201 (10th Cir.1998). Because the Fourth Amendment commands that warrants be drafted with particularity, we have held that the conditions precedent to any search must be stated in the warrant. *United States v. Hotal,* 143 F.3d 1223, 1226 (9th Cir.1998) (adopting the First Circuit rule that "when a warrant's execution is dependent on the occurrence of one or more conditions, the warrant itself must state the conditions precedent to its execution and these conditions must be clear, explicit and narrow"). Requiring the warrant to set forth the conditions precedent to the search serves two important purposes: it (1) limits the discretion of the officers executing the warrant, and (2) informs the property owner or resident of the proper scope of the search. *Id.* at 1227.

■ It is important to emphasize that we have not held that the condition precedent must be stated within the four corners of the warrant itself. The Fourth Amendment's particularity requirement is satisfied if (1) an affidavit setting forth the triggering event for the search accompanies the warrant at the time of the search, and (2) the warrant sufficiently incorporates that accompanying affidavit. *See Ramirez v. Butte–Silver Bow County,* 298 F.3d 1022, 1026 (9th Cir.2002) (noting the "well-settled law of this Circuit" that "a warrant may be construed with reference to the affidavit" only if the affidavit is incorporated by and accompanies the warrant); *United States v. McGrew,* 122 F.3d 847, 849 (9th Cir.1997); *United States v. Van Damme,* 48 F.3d 461, 466 (9th Cir. 1995); *United States v. Towne,* 997 F.2d 537, 544–47 (9th Cir.1993); *United States v. Spilotro,* 800 F.2d 959, 967 (9th Cir. 1986); *United States v. Hayes,* 794 F.2d 1348, 1354 (9th Cir.1986), *cert. denied,* 479 U.S. 1086, 107 S.Ct. 1289, 94 L.Ed.2d 146 (1987); *United States v. Hillyard,* 677 F.2d 1336, 1340 (9th Cir.1982); *In re Property Belonging to Talk of the Town Bookstore, Inc.,* 644 F.2d 1317, 1319 (9th Cir. 1981); *see also Hotal,* 143 F.3d at 1227 (holding that "in order to comply with the Fourth Amendment, an anticipatory search warrant must either on its face or on the face of the accompanying affidavit, clearly, expressly, and narrowly specify the triggering event.").[3] Though the aforementioned rule is oft-stated, few of our cases have actually turned on its application. None of our cases has addressed what "suitable words of reference" are required to incorporate a supporting affidavit.

■ The search warrant in this case satisfies the dictates of our case law. First, the affidavit setting forth the conditions precedent accompanied the search warrant at all relevant times prior to and during the search.[4] Second, the warrant adequately incorporated the accompanying affidavit. The warrant explicitly stated: *"Upon the sworn complaint made before me* there is probable cause to believe that the crime(s) of VUCSA/POSSESSION INTENT TO DELIVER has been committed . . . ." (emphasis added). Furthermore, we learned at oral argument that in Washington State, contrary to the practice we usually see in federal court, the issuing judge routinely attaches the supporting affidavit, or "sworn complaint," to the warrant, and that the issuing judge and the officers executing the warrant view the warrant and affidavit as one integrated document. There is no evidence that this practice was not followed here. Agent Mancano testified at the suppression hearing that he viewed the warrant and affidavit together

---

3. Other circuits have concluded that an anticipatory search warrant is valid even if the condition precedent is not stated on the face of the warrant or an *attached* affidavit, so long as the affidavit adequately specifies the condition precedent to the search and that condition is satisfied. *See, e.g., United States v. Moetamedi,* 46 F.3d 225, 229 (2d Cir.1995) (upholding an anticipatory search warrant where the supporting affidavit stated "clear and precise conditions for the execution of the Warrant" and where "these conditions were satisfied," even though the affidavit was not attached to the warrant and the warrant did not on its face state the condition precedent to the search). The rule in our Circuit, however, is that the affidavit must accompany the warrant and be incorporated by reference in order to be considered in conjunction with the warrant.

4. In the present case, the affidavit not only accompanied the warrant, but was physically attached to it. We stress that only accompaniment, not physical attachment, is required. *See Towne,* 997 F.2d at 548 ("We simply do not believe that the Constitution requires us to draw the line between lawful and unlawful searches according to the presence or absence of a staple, a paper clip, a bit of tape, or a rubber band.").

in determining whether the search was conditional; he instructed the agents accordingly.

Certainly, the warrant does not explicitly say: "The attached affidavit is incorporated herein by reference as if fully set forth below." However, there are no required magic words of incorporation. Our case law requires only "*suitable* words of incorporation." *Ramirez*, 298 F.3d at 1026 (emphasis added). Commissioner Harper (who issued the warrant), Detective Haley (who applied for the warrant), and Agent Mancano (who oversaw execution of the warrant) all recognized that the attached affidavit was part of the warrant. We have previously noted that:

> [t]he documents that are in fact relied upon ... simply *are* "the search warrant" for purposes of constitutional analysis.... When the officer who requests authorization for the search, the magistrate who grants such authorization, and the officers who execute the search expressly rely upon a given set of papers containing a given series of words, they identify *that* set of papers and *that* series of words as the proof that proper precautions were taken to prevent an unreasonably invasive search. Fairness and common sense alike demand that we test the sufficiency of the precautions taken—that is, that we conduct the particularity and overbreadth inquiries—by examining *that* evidence.

*Towne*, 997 F.2d at 548. Given the agents' reliance upon the affidavit, the state practice of attaching the affidavit to the warrant and reading the affidavit and warrant as one document, and the express language in the warrant providing that probable cause to search is based upon the sworn complaint, we conclude that the warrant in this case sufficiently incorporated the accompanying affidavit.

Despite Vesikuru's assertions to the contrary, our holding is entirely consistent with our decision in *Hotal*. Similar to Vesikuru's case, *Hotal* concerned an anticipatory search warrant in which the supporting affidavit—and not the actual warrant—set forth the condition precedent to the lawful search. It was undisputed in *Hotal* that the warrant incorporated the supporting affidavit by reference. We ruled the warrant in *Hotal* unconstitutional nonetheless because no evidence in the record indicated that the affidavit actually accompanied the warrant at the time of the search. 143 F.3d at 1226–27. Without the affidavit being present, no document existed to inform the officers executing the search or the persons subject to the search of the condition precedent. Therefore, the warrant failed to limit the discretion of the officers executing the search and failed to inform Hotal whether the search was lawful. *See id.* at 1227. Thus, the constitutional requirement of a specific and particularized warrant was not satisfied. *Id.*

In contrast to *Hotal*, here the supporting affidavit accompanied—indeed was attached to—the warrant. The agents read the affidavit in conjunction with the warrant, and they considered the triggering event specified in the affidavit to be a required part of the warrant. The dual purposes for a specific and particularized warrant were satisfied: the agents' discretion was curbed, and a document reviewed and approved by a neutral magistrate existed to inform Vesikuru of the preconditions for a lawful search. This is all we required in *Hotal*:

> The warrant's identification of the triggering event is not merely "efficient" or preferable; it is indeed the only way effectively to safeguard against unreasonable and unbounded searches. We do not suggest, however, that the triggering conditions must appear on the face of the warrant rather than on the face of an attached affidavit that accompanies it. We conclude only that the necessary conditions must appear in the court-is-

sued warrant and attachments that those executing the search maintain in their immediate possession in order to guide their actions and to provide information to the person whose property is being searched.

*Id.* at 1227. Because the anticipatory warrant in this case sufficiently incorporated the supporting affidavit and the affidavit accompanied the warrant at the time of the search, we hold that the warrant was facially valid.

### III

■ Vesikuru next argues that the warrant was not supported by probable cause. We review a finding of probable cause de novo, but "review findings of historical fact only for clear error and . . . give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas v. United States,* 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). We need only find that the issuing judge had a "substantial basis" for finding probable cause. *Illinois v. Gates,* 462 U.S. 213, 238–39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). In the context of anticipatory search warrants, the issuing judge must "determine, based on the information presented in the warrant application, that there is probable cause to believe the [contraband] items to be seized will be at the designated place when the search is to take place." *Rowland,* 145 F.3d at 1201.

■ In this case, the anticipatory warrant was supported by probable cause. The supporting affidavit indicated that

California BNE agents had intercepted a package containing more than 32 fluid ounces of a liquid believed to be PCP, and that this package was addressed and en route to the West Seattle residence when it was seized.[5] The affidavit also provided that no search of the West Seattle residence would commence until the mock package had first been accepted and taken into the residence.

The conditions precedent to the search guaranteed that the package was on a "sure course" to the West Seattle residence. *United States v. Ruddell,* 71 F.3d 331, 333 (9th Cir.1995) ("An affidavit in support of an anticipatory search warrant must show that the property sought is on a sure course to the destination targeted for the search."); *cf. United States v. Hendricks,* 743 F.2d 653, 655 (9th Cir.1984) (holding anticipatory search warrant was not supported by probable cause where the contraband was not on a sure course to the residence searched), *cert. denied,* 470 U.S. 1006, 105 S.Ct. 1362, 84 L.Ed.2d 382 (1985). These conditions precedent also ensured a sufficient nexus between the contraband found in California and the West Seattle residence. *See United States v. Rodriguez,* 869 F.2d 479, 484 (9th Cir. 1989) (holding that the issuing judge must find a "reasonable nexus" between the contraband sought and the residence). Commissioner Harper had a substantial basis for concluding that, once the package was accepted and taken into the residence, evidence relating to drug trafficking could be found therein. Thus, the warrant was supported by probable cause.[6]

---

**5.** The affidavit, in addition to describing the probable presence of PCP inside the package, incorporated by reference and attached the State of California County of Los Angeles Search Warrant Affidavit and its Statement of Probable Cause.

**6.** The government argues that even if we were to find that the warrant was not supported by probable cause, the good faith exception to

the warrant rule would save the evidence seized. *See United States v. Leon,* 468 U.S. 897, 922, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); *see also Rowland,* 145 F.3d at 1208 (applying the good faith exception to a search conducted pursuant to an anticipatory warrant not supported by probable cause); *Hendricks,* 743 F.2d at 656 (same). We decline to opine whether the good faith exception would

## IV

Finally, Vesikuru argues that even if the warrant was facially valid, the search of his residence was unconstitutional because agents failed to abide by the conditions precedent to a lawful search. Specifically, he contends that the agents never observed the package being taken into the West Seattle residence, and therefore they exceeded the scope of their authority by executing the search. We disagree.

Probable cause to search the West Seattle residence hinged upon the occurrence of two triggering events. First, the package had to be accepted by someone at the residence. Second, the agents had to observe the package being taken into the residence. If one or both of these triggering events did not occur, the warrant was void, and evidence gathered from the search would have to be suppressed. *Rowland*, 145 F.3d at 1201 ("If the triggering events do not occur, the anticipatory warrant is void."); *United States v. Garcia*, 882 F.2d 699, 702 (2d Cir.1989) ("An anticipatory warrant, by definition, is a warrant that has been issued before the necessary events have occurred which will allow a constitutional search of the premises; if those events do not transpire, the warrant is void."), *cert. denied sub nom. Grant v. United States*, 493 U.S. 943, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989); *see also Horton v. California*, 496 U.S. 128, 140, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990) ("If the scope of the search exceeds that permitted by the terms of a validly issued warrant or the character of the relevant exception from the warrant requirement, the subsequent seizure is unconstitutional without more."). Without question, the package was accepted by Castro, Vesikuru's girlfriend. The only issue before us is whether the agents "observed" the package being taken into the residence.

According to Vesikuru, because the agents did not "see" the package being taken into the residence, it follows that the agents did not "observe" the event. We agree with the district court's common sense appraisal of the evidence and reject Vesikuru's hypertechnical and narrow reading of the warrant language. *See United States v. Federbush*, 625 F.2d 246, 251 (9th Cir.1980) (holding that a warrant must be interpreted in a "common sense and realistic fashion" and rejecting the defendants' "hypertechnical" argument that "warrants limit[ing] the items to be seized to those held 'in violation of' [a particular statute] precluded the seizure of 'mere evidence' of the commission of the crime"); *see also United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965) ("[A]ffidavits for search warrants ... must be tested and interpreted by magistrates and courts in a common-sense and realistic fashion."). "To observe" is defined more broadly than "to see." According to *Webster's Third New International Dictionary* (1986 unabridged), "observe" also means "to come to realize or know especially through consideration of noted facts." After learning that the package was neither on the porch nor in the minivan, and that it had been opened, the agents reached the logical conclusion: the package had been taken into the house and opened by someone other than Castro.

Reading the warrant in a common sense fashion, the agents had authority to search once they deduced that the package must be inside the residence. There was no other place the package could have been. The other possibilities had been ruled out once the agents determined that the package was neither on the porch nor in the minivan. We therefore hold that the district court did not clearly err in finding

apply in this case because the district court was never asked to consider that issue.

that the agents "observed" the package being taken into the residence for purposes of triggering the condition precedent to entry.

### V

The warrant was facially valid because it was accompanied by, and sufficiently incorporated, an affidavit specifying the conditions precedent to the search. The issuance of the warrant was supported by probable cause because the issuing judge had a sufficient basis for believing that evidence relating to drug trafficking would be found in the West Seattle residence at the time of the search. Finally, the search warrant was properly executed because the officers did not commence the search until the conditions precedent had been satisfied. Therefore, Vesikuru's Fourth Amendment rights were not violated by the search of his residence, and the district court properly denied his motion to suppress the incriminating evidence seized during the search.

**AFFIRMED.**