COURT OF APPEALS OF VIRGINIA


Present: Judges Frank, McClanahan and Petty
Argued at Richmond, Virginia


MARCUS DARIUS FORD

OPINION BY
v.      Record No. 1047-08-2          JUDGE ELIZABETH A. McCLANAHAN
JANUARY 26, 2010
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Timothy J. Hauler, Judge

David Paul Morgan (The Law Firm of David Paul Morgan, on brief),
for appellant.

Jennifer C. Williamson, Assistant Attorney General (William C.
Mims, Attorney General, on brief), for appellee.


Marcus Darius Ford appeals his convictions in a jury trial for transporting more than five

pounds of marijuana into the Commonwealth with intent to distribute and possession of more than

five pounds of marijuana with intent to distribute. He argues the trial court erred in denying his

motion to suppress evidence found in his home pursuant to execution of an anticipatory search

warrant and in denying his motion to strike and motion to set aside the verdict with regard to the

transporting charge. We find no error in the trial court's rulings and affirm its judgment.

I. BACKGROUND

On appeal, we review the evidence in the "light most favorable" to the Commonwealth.

Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003) (citation omitted).

That principle requires us to "'discard the evidence of the accused in conflict with that of the

Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and

all fair inferences that may be drawn therefrom.'" Kelly v. Commonwealth, 41 Va. App. 250,

254, 584 S.E.2d 444, 446 (2003) (*en banc*) (quoting Watkins v. Commonwealth, 26 Va. App. 335, 348, 494 S.E.2d 859, 866 (1998)). See also Bolden v. Commonwealth, 275 Va. 144, 147-48, 654 S.E.2d 584, 586 (2008); Molina v. Commonwealth, 272 Va. 666, 671, 636 S.E.2d 470, 473 (2006); Viney v. Commonwealth, 269 Va. 296, 299, 609 S.E.2d 26, 28 (2005); Walton v. Commonwealth, 255 Va. 422, 425-26, 497 S.E.2d 869, 871 (1998).

Special Agent Mason G. Edwards, with the Virginia State Police, responded to a United Parcel Service (UPS) Distribution Center regarding a suspicious package shipped from a packaging store in California and addressed to a "Shanese Williams" at Ford's home address.[1] Edwards used a probe in the bottom corner of the box to test the contents of the package and determined it contained marijuana. Special Agent Edwards delivered the package to the Chesterfield County police who opened the box pursuant to a search warrant.[2] They took out an internal package of marijuana, weighed it,[3] re-packaged it, and obtained an anticipatory warrant to search Ford's home that they placed in the package. The warrant stated:

> The search warrant will only be executed on the residence if the
> following occurs. A Chesterfield County Police detective will
> make a controlled delivery of a brown U.S. Postal Service box or
> USPS box with a tracking number. The package will be accepted
> by an individual at the address and taken into their [sic] custody. If
> any of these events do not occur, a search warrant will not be

---

[1] The Commonwealth alleged Ford was a drug courier who was to receive a package of drugs at his home and hold it until the drug organization deemed it safe to retrieve the drugs from him. There is no information about whether "Shanese Williams" was a real person. It was not the name of Ford's fiancée who was living in his home. Special Agent Edwards explained the use of fictitious names for shippers and receivers is common and it would have surprised him if the package had been addressed to Ford.

[2] There is no challenge to the issuance or execution of the search warrant to open the box.

[3] The inner package weighed 15.8 pounds. The parties stipulated the box contained more than five pounds of marijuana.

executed, and the search warrant will be returned to the clerk of the court.[4]

The Chesterfield County police began surveillance on Ford's residence at about 12:10 p.m. At that time, Ford was sitting in the driver's seat of a white Comcast van parked in front of his home.[5] He left ten or fifteen minutes later and returned twice before the police delivered the package. The first time Ford returned he slowly drove by his home looking at the front of the house. The second time he returned he backed into his driveway and went to the rear of the house before leaving again. The package was delivered by police at about 2:30 p.m. and placed against the door on the front stoop when no one answered the door. Ford later returned to his home, retrieved his mail, walked directly to the front stoop but turned right toward his driveway and left again in a maroon van. At around 9:00 p.m., Ford returned home, opened the rear sliding door of his van, walked over to the stoop, took the package, and returned to the van, placing the box behind the driver's seat. When the police observed Ford manipulating the package, they arrested him and found the box in Ford's van. The box was not opened but the shipping labels had been torn off and were crumpled up in a cup holder in the ashtray area of the van. After police arrested Ford, they searched Ford's home and found drugs, smoking devices, scales, and weapons.[6]

---

[4] Neither the search warrant nor the affidavit was included in the record. The language in the search warrant was quoted by Ford's counsel at the hearing on the motion to suppress and read into the record at trial by the detective who obtained the warrant. Based on this language (which has not been disputed by either party), the warrant was to search Ford's residence, not the package, which had been previously searched pursuant to an earlier search warrant.

[5] Ford testified at trial he was employed by Comcast as a technician at that time and was working in that capacity on the day in question.

[6] Because the search warrant was not included in the record, the facts regarding items recovered in the home are based on the brief in support of the motion to suppress and the testimony and exhibits at trial.

Ford denied he was the intended recipient of the package and claimed he first saw the package when he returned home around 9:00 p.m. Ford testified he placed the package in his van so that he could return it to UPS and "keep it moving." He denied removing the shipping labels. He claimed the drugs and paraphernalia found in his home belonged to his fiancée.

Ford was indicted for transporting more than five pounds of marijuana into the Commonwealth with intent to distribute, in violation of Code § 18.2-248.01, and for possession of more than five pounds of marijuana with intent to distribute, in violation of Code § 18.2-248.1(a)(3). Before trial, Ford moved to suppress the evidence found in his home and argued he did not accept the package as required by the anticipatory warrant. The trial court denied the motion to suppress finding once Ford "asserted dominion and control over the object and in fact started to open the object by removing the delivery markings that he had in fact accepted the package." During trial, Ford moved to strike the evidence, which the trial court denied. The jury convicted Ford of the transporting and possession charges. After trial, Ford moved to set aside the jury verdict on the grounds the Commonwealth failed to link Ford to the importation element of the transporting charge. The trial court denied Ford's motion.

## II. MOTION TO SUPPRESS

Ford contends the trial court erred in finding the conditions precedent set forth in the anticipatory search warrant, i.e. that Ford accepted delivery of the package, were met.[7]

### A. Standard of Review

To prevail on appeal Ford bears the burden to "show that the trial court's denial of his suppression motion, when the evidence is considered in the light most favorable to the prosecution, was reversible error." Whitfield v. Commonwealth, 265 Va. 358, 361, 576 S.E.2d 463, 464 (2003).

---

[7] Ford does not challenge the validity of the warrant, see, e.g., Ward v. Commonwealth, 273 Va. 211, 639 S.E.2d 269 (2007), only its execution.

Although we review the trial court's application of the law *de novo*, Kyer v. Commonwealth, 45 Va. App. 473, 479, 612 S.E.2d 213, 216-17 (2005) (*en banc*), we defer to the trial court's findings of fact taking care "'both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers.'" Malbrough v. Commonwealth, 275 Va. 163, 169, 655 S.E.2d 1, 3 (2008) (quoting Reittinger v. Commonwealth, 260 Va. 232, 236, 532 S.E.2d 25, 27 (2000)) (citation omitted); see also Ferguson v. Commonwealth, 52 Va. App. 324, 334, 663 S.E.2d 505, 510 (2008), aff'd, 278 Va. 118, 677 S.E.2d 45 (2009). "Thus, we must give 'deference to the factual findings of the trial court' and 'independently determine' whether those findings satisfy the requirements of the Fourth Amendment." Kyer, 45 Va. App. at 479, 612 S.E.2d at 217 (quoting Whitfield, 265 Va. at 361, 576 S.E.2d at 464). We consider the evidence adduced at the hearing on the motion to suppress as well as the evidence adduced at trial. Dodd v. Commonwealth, 50 Va. App. 301, 306, 649 S.E.2d 222, 224 (2007); DePriest v. Commonwealth, 4 Va. App. 577, 583, 359 S.E.2d 540, 542-43 (1987).

## B. Analysis

"An anticipatory warrant is 'a warrant based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specified place.'" United States v. Grubbs, 547 U.S. 90, 94 (2006) (quoting 2 W. LaFave, Search and Seizure § 3.7(c), at 398 (4th ed. 2004)). "Most anticipatory warrants subject their execution to some condition precedent other than the mere passage of time—a so-called 'triggering condition.'" Id.[8] If the triggering condition is not satisfied, the warrant is void.

---

[8] 
> [F]or a conditioned anticipatory warrant to comply with the Fourth Amendment's requirement of probable cause, two prerequisites of probability must be satisfied. It must be true not only that *if* the triggering condition occurs there is a fair probability that contraband or evidence of a crime will be found in a particular

United States v. Vesikuru, 314 F.3d 1116, 1123 (9th Cir. 2002). "The use of anticipatory warrants in situations where drugs or other illegal items are in transit through either the mail or via private delivery company was recently confirmed as constitutional" by the Supreme Court in Grubbs. United States v. Turner, 491 F. Supp. 2d 556, 558-59 (E.D. Va. 2007).

The warrant to search Ford's home stated it "will only be executed on the residence" if the package is "accepted by an individual at the address and taken into their [sic] custody." Ford contends one of the triggering conditions – that the package be accepted by an individual at the residence – was not satisfied prior to the warrant's execution.[9] Thus, Ford challenges the trial court's fact-finding at the suppression hearing. See, e.g., United States v. Whited, 539 F.3d 693, 698 (7th Cir. 2008) (claim that triggering condition did not occur is a challenge to the trial court's fact-finding and subject to deferential review). "Accept" means "to receive willingly." Merriam-Webster's Collegiate Dictionary 48 (9th ed. 1985). Ford retrieved the package from his front stoop, placed it in his van, and proceeded to open it by removing the shipping labels. The trial court found Ford "accepted the package" when he "asserted dominion and control over the [package] and in fact started to open the [package] by removing the delivery markings." The trial court did not believe Ford's denial that he removed the shipping labels, which were found by police crumpled and placed in a cup holder inside Ford's van. And the trial court clearly found Ford's explanation that he was going to take the package back to UPS to "keep it moving" not credible in light of the fact that the removal of the shipping labels precluded further movement of the package through the UPS delivery system. In its role as fact finder, the trial

place, but also that there is probable cause to believe the triggering condition *will occur.*

Id. at 96-97 (internal quotation marks and citation omitted) (emphasis in original).

[9] Ford does not argue he did not take the package into "custody" as also required by the warrant.

judge was free to disbelieve Ford's self-serving testimony and conclude he was lying to conceal his guilt. Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998). We find no clear error in the trial court's findings. Malbrough, 275 Va. at 169, 655 S.E.2d at 3.[10] Thus, the triggering condition requiring acceptance of the package was satisfied and the motion to suppress was properly denied.

### III. SUFFICIENCY OF THE EVIDENCE

Ford argues the evidence was insufficient to support his conviction for transporting more than five pounds of marijuana into the Commonwealth with intent to distribute because there was no evidence linking Ford to the package of marijuana.

### A. Standard of Review

When considering a challenge to the sufficiency of the evidence on appeal, a reviewing court does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (emphasis in original; citation and internal quotation marks omitted). Instead, we ask only "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the

---

[10] We reject Ford's contention that acceptance of the package required a hand-to-hand delivery from one person to another. See, e.g., Turner, 491 F. Supp. 2d at 561 n.5 (court failing to recognize a distinction between handing a package over to whatever individual happens to answer the door and a package left on a doorstep that police surveillance establishes is thereafter taken by an individual who emerges from such residence). The warrant, on its face, did not require hand-to-hand delivery. And the triggering language of an anticipatory search warrant should be read, "not 'hypertechnically,' but in a 'common sense' fashion." United States v. Gendron, 18 F.3d 955, 966 (1st Cir. 1994) (quoting United States v. Ventresca, 380 U.S. 102, 109 (1965)); see also United States v. Miggins, 302 F.3d 384, 395 (6th Cir. 2002) (conditions triggering an anticipatory search warrant to be "[r]ead in a common sense fashion, and avoiding a 'hypertechnical' construction"); Vesikuru, 314 F.3d at 1123 (agreeing with district court's "common sense appraisal" and rejecting defendant's "hypertechnical and narrow reading" of the triggering event language in the warrant). We agree with the trial court's common sense reading of the warrant in reaching its conclusion that Ford accepted the package when he retrieved it from his front stoop, placed it in his van, and proceeded to open it by removing the shipping labels.

essential elements of the crime beyond a reasonable doubt.'" Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008) (quoting Jackson, 443 U.S. at 319) (emphasis in original). See also McMillan v. Commonwealth, 277 Va. 11, 19, 671 S.E.2d 396, 399 (2009); Jones v. Commonwealth, 277 Va. 171, 182, 670 S.E.2d 727, 734 (2009). These principles recognize that an appellate court is "not permitted to reweigh the evidence," Nusbaum v. Berlin, 273 Va. 385, 408, 641 S.E.2d 494, 507 (2007), because appellate courts have no authority "to preside *de novo* over a second trial," Haskins v. Commonwealth, 44 Va. App. 1, 11, 602 S.E.2d 402, 407 (2004). This deferential standard of review "applies not only to the historical facts themselves, but the inferences from those facts as well." Crowder v. Commonwealth, 41 Va. App. 658, 663 n.2, 588 S.E.2d 384, 387 n.2 (2003). Thus, a fact finder may "draw reasonable inferences from basic facts to ultimate facts," Haskins, 44 Va. App. at 10, 602 S.E.2d at 406 (citations omitted), unless doing so would push "into the realm of *non sequitur*," Thomas v. Commonwealth, 48 Va. App. 605, 608, 633 S.E.2d 229, 231 (2006) (citation omitted).

## B. Analysis

Code § 18.2-248.01 makes it "unlawful for any person to transport into the Commonwealth by any means with intent to sell or distribute . . . five or more pounds of marijuana." Applying this statute to illegal transportation of controlled substances by mail, this Court held "[defendant's] act of accepting delivery of [a] parcel of marijuana was part of the parcel's transportation." Washington v. Commonwealth, 43 Va. App. 291, 307, 597 S.E.2d 256, 264 (2004). Although Ford contends the evidence failed to "make any connection" between Ford and the package of drugs to prove he played a role in its transportation from California into Virginia, we disagree. The package was addressed to Ford's residence. Although the name of the addressee was a "Shanese Williams," Special Agent Edwards testified the use of fictional names for recipients is common and that he would have been surprised if Ford had been identified as the recipient. Prior to the controlled

delivery, police observed Ford parked in front of his home during the workday, leave and return only to slowly drive by his home looking at his front door, leave and return again backing into his driveway and walking to the rear of the house, then leave again. After the controlled delivery, police observed Ford return home and walk directly to the front stoop where the package was located but wait to retrieve the package until about 9:00 p.m., at which time he placed it into the maroon van and began to open it. The jury could infer from this evidence that Ford was the intended recipient of the package and in fact expecting it as shown by his behavior during the police surveillance. Thus, the evidence was sufficient to prove his connection to the package such that when he began to open the package, his "act of accepting delivery" of the package "was part of the parcel's transportation." Id.

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.